LILLIAN CLERK v. ANDY SCHWAB, Appellant.—40 S. W. (2d) 635.

Division One, June 24, 1931.

*Fulbright & Sheppard* for appellant.

*C. T. Bloodworth* for respondent.

237

RAGLAND, J.—This is a suit in equity to have a deed, made by the trustee to the purchaser of land at a foreclosure sale under a deed of trust, decreed a mortgage, and for other relief in consonance with a holding that the deed is a mortgage. The chancellor below found the issues for the plaintiff and awarded the relief prayed. The cause is here on defendant's appeal.

The facts are comparatively simple, though somewhat difficult of ascertainment, owing to the fact that on the witness stand both appellant and· respondent, the one being a native of France and the other of Germany, were unable to express themselves in the English language with any decree of clearness. However, the hearing as it proceeded became somewhat informal, and with the aid, as well as the forbearance, of both court and counsel the essentials of the controversy were fairly well developed.

Long prior to the transaction out of which this action arose, the respondent, Mrs. Clerk, and her husband gave one Sheets a deed

of trust on 160 acres of land owned by her in Carter County to secure a note for $480. After giving this deed of trust, respondent entered into an agreement with her brother to exchange the land for property owned by him in the State of Michigan, where he lived. In accordance with such understanding she, being joined by her husband, executed a deed purporting to convey to him the Carter County land subject to the deed of trust, had it recorded and then forwarded it to her brother. He in the meantime having changed his mind with regard to the exchange, refused to accept the deed and returned it to her. Following these transactions her husband seems to have disappeared from the scene. She remained on the land, living alone. His absence, however, was apparently not regarded as having any bearing on the situation in which she subsequently found herself. It was not mentioned in any of the negotiations which later took place between her and Schwab.

Appellant and respondent lived on adjoining farms. Respondent being in default as to the payment of a balance due on the Sheets note, notice was given by publication that the land would be sold pursuant to the terms of the deed of trust, on December 28, 1925, at Van Buren, the county seat of Carter County. The land, valuable chiefly for timber growing on it suitable for railroad ties, was worth approximately $1500; the mortgage debt had been greatly reduced; notwithstanding, respondent did not have the means for discharging the debt. In this dilemma she applied to her neighbor, Schwab, for a loan. He told her that, if her title was all right, he would loan her whatever money she needed, and for as long as she needed it, she to pay him interest at eight per cent. Accordingly they went to Van Buren, in his automobile, a week or ten days before the sale was to take place, to make an investigation as to her title and the amount of money that would be required to pay the Sheets note. There they called upon Mr. C. P. Turley, a lawyer who was engaged in the abstract business. They did not apply for an abstract, they merely requested that Mr. Turley give them an opinion as to the title. He told them that it would require some time to make an examination; thereupon they left, saying they would return on the day of the sale.

On the sale day Mrs. Clerk and Schwab returned to Van Buren, but the land had been sold before they arrived. Upon learning that the sale had already taken place, Mrs. Clerk became greatly wrought up and apparently created some stir around the courthouse. Finally, Mr. Condrey who had bought the land for $225, yielded to her request, in which Schwab joined, that the land be sold again. The sheriff, the acting trustee, acquiesced and the land was again offered for sale. Condrey again bid $225; Schwab $250, and Mrs. Clerk

$275. Mrs. Clerk, Schwab and the sheriff then went to the office of Mr. J. L. Moore, an attorney, who was directed by the sheriff to prepare a deed. Presently, while the deed was being drawn, the sheriff requested that Mrs. Clerk pay him the amount of her bid. She replied that Mr. Schwab was going to loan her the money and take a deed of trust on the land. Schwab then said, in effect, that he would not loan her the money, because the title to the land was in her brother. Appellant, sometime after his arrival in town, had requested Moore to investigate the title, and the latter after having done so told Schwab that the record disclosed that Mrs. Clerk had deeded the land to her brother and that there had been no reconveyance; he then advised Schwab that a deed of trust from Mrs. Clerk would be worthless.

Schwab's refusal to let Mrs. Clerk have the money halted the preparation of the deed; the land was put up for sale a third time; Schwab on his bid of $250 became the purchaser. The parties again repaired to Mr. Moore's office. Mrs. Clerk was crying, saying she had been ''defrauded out of her land.'' Schwab said to her, in effect, ''You get a deed from your brother within thirty days and show it to me and I will deed you the land and take a deed of trust for my money.''

Mr. Moore testified that the conversation about the title and Schwab's refusal to loan money on it occurred before the sale. He evidently meant before the third and final sale. Mrs. Clerk certainly did not know that Schwab would refuse to make the loan at the time she was bidding on the land and it was knocked off to her.

Something like four months after the trustee's sale, respondent procured from her brother a deed purporting to reconvey the land to her; she showed this deed to appellant and demanded that he convey the land to her and take a deed of trust to secure the money he had advanced for its purchase at the foreclosure sale. Appellant told her in substance that she was too late, that the land was then his, and that he wanted her to move off. Subsequently, through her attorney, she tendered the amount appellant had paid out on account of the land, with interest at the rate of eight per cent per annum; appellant refusing to accept the money tendered, this action was commenced.

Appellant has advanced and briefed a number of propositions, most of which, if we have properly grasped the facts, are wide of the mark. Considered collectively they may be regarded as asserting that the evidence does not support the decree *nisi*. A determination of that contention will dispose of the incidental questions which adhere in the case.

There is no question in this case but that in advance of the fore-

closure sale appellant promised to loan respondent whatever sum of money would be necessary to pay and discharge the mortgage debt to Sheets, and that in reliance upon that promise she made no further effort to obtain the money. Nor is there any doubt that at the time of the sale, the flaw in the record title having been then discovered, appellant promised that the title he took under the trustee's deed would be held by him as security for the money advanced until respondent could correct the apparent defect in the title and that he would then convey to her and take a deed of trust as security, and that she accepted and acted upon the promise so made. It is true, as appellant contends, that this latter promise was made after the land had been actually knocked off to him on his bid. But even so, it merely modified or supplemented the original agreement of which by relation it became a part. It is difficult of course to understand the theory entertained that Schwab could get a good title at the trustee's sale, but Mrs. Clerk could not; and further, that though Schwab got a good title, as was assumed, he could not convey it to Mrs. Clerk. The record, however, acquits Schwab of bad faith in this respect: on the advice of counsel he clearly believed that Mrs. Clerk could never give him a valid deed of trust until she had obtained a deed from her brother.

On the witness stand, appellant's only excuse for not conveying to respondent and accepting repayment of his money or a deed of trust to secure it was that she did not produce a deed from her brother for a period of four months. But clearly the trustee's deed taken by him, by virtue of their agreement, was an equitable mortgage, and the lapse of four months did not convert the agreement into a conditional sale, nor into a contract for the conveyance of real estate within the Statute of Frauds, nor into a contract prescribing terms upon which the land might be redeemed. Once a mortgage, always a mortgage. [Phillips v. Jackson, 240 Mo. 310, 144 S. W. 112.]

The judgment of the circuit court is affirmed. All concur.